

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

478

Honorable W. J. Bailey, Chairman
Public Printings Committee
House of Representatives
Austin, Texas

Dear Mr. Bailey:          Opinion No. O-3312

                          Re:  Constitutionality of Substi-
                               tute Bill for H. B. No. 55
                               (Printing of textbooks)

        We acknowledge receipt of your request for a legal opinion concerning the constitutional validity of a proposed substitute bill for H. B. No. 55, which substitute is as follows:

**"A BILL**

**TO BE ENTITLED**

AN ACT creating Article 2846B, as a part of Chapter 16, Title 49, Revised Civil Statutes of the State of Texas, placing additional duties upon the State Board of Education and the Textbook Committee with reference to preferential treatment of textbooks and teachers manuals wholely or partly manufactured in Texas; providing for submission in manuscript form of such textbooks and manuals not in print; providing that textbooks and teachers manuals shall be printed and bound in Texas, repealing all laws and parts of laws in conflict with this Act; and declaring an emergency, and making this Act effective from and after its passage.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable A. J. Bailey - page 2

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS;

"1. That it shall be the duty of any board of education, school board, board of trustees, official or any person elected or appointed to carry out the provisions of the laws of Texas relating to the public schools of said State and vested with the powers of designating textbooks or of purchasing or contracting for textbooks and/or rebinding and/or teachers' manuals, under authority of Chapter 16 of Title 49, Revised Civil Statutes of 1925 of the State of Texas, or under any article or subdivision of any article of said Chapter, or under any amendment thereof, for the use or benefit of the public schools of this State, to (in all such purchases or such contracts hereafter made or entered into) give preference to textbooks and teachers manuals which are entirely written, composed, compiled, printed, and bound, and/or rebound in the State of Texas, to the exclusion of any such textbook entirely or partly written, composed, compiled, printed, or bound and/or rebound outside of the State of Texas, provided it shall appear to such board, official or person so contracting or purchasing that such textbook or manual so as aforesaid wholely manufactured in the State of Texas be of superior or equal educational merit to and can be procured at the same or less cost than textbooks and/or manuals on similar subjects and of equal educational merit entirely or partly written, composed, compiled, printed and bound and/or rebound outside of the State of Texas; provided, also, that in event such textbook or teachers manual of such superior or equal educational merit and of Texas authorship and compilation is found by the State Board of Education to be unobtainable when contracts for such textbooks or manuals should be made, then and in such event, such contract therefor may, at the discretion of the State Board of Education provide for books or manuals, as the case may be, which are written and/or compiled outside the State of Texas but such contracts shall require that such books or manuals be printed and bound and/or rebound in the State of Texas by established printers and/or binders domiciled in this State; provided, also, that the cost to the State of Texas of any textbook or teachers manual wholely or partly manufactured in the State of Texas shall not be higher than the minimum cost of the same book in any other State, after all discounts have been allowed.

"2. It shall be the duty of the State Board of Education to encourage Texas authorship of textbooks and teachers

manuals, and the printing and binding and/or rebinding in the State of Texas of such books and manuals, as an aid to greater industrialization of Texas; and to encourage such authorship and industrialization, textbooks and manuals of Texas authorship not yet in print may be submitted in manuscript form to the State Board of Education for its consideration, provided such author or bidder offering such textbook or manual furnish the State Board of Education not less than nine copies of such manuscript for the convenient study of the members of said Board or of its Textbook Committee. Said Textbook Committee, in making its recommendations to said State Board of Education relative to the teachable value of books submitted, shall give preference to books of Texas authorship and Texas printing and binding and/or rebinding provided in its opinion such books be of equal educational value to books wholely or partly produced outside the State of Texas.

"3. This Act shall be known as Article 2846B; and all laws or parts of laws in conflict herewith are hereby repealed.

"4. Because of the crowded condition of the calendar and the fact that contracts for textbooks may be let during the time set by law and in order that Texas authors or bidders on books by Texas authors may have ample time for the preparation of their manuscripts or bids, there exists an imperative demand and public necessity that the Constitutional rule that bills be read on three several days in each House be suspended, and said Rule is hereby suspended, and this Act shall become effective from and after its passage."

We have carefully examined the substitute and beg to advise that in our opinion the same is a valid Act and free from any vice of constitutional invalidity.

The Bill does not purport to apply to persons or corporations with respect to any right or

Honorable A. J. Bailey - page 4

rights that are already vested, and indeed it could not do so because of the constitutional prohibition against retrospective or retroactive laws.

The principle is analogous to that discussed by us in Opinion No. O-1678, advising the State Board of Control that under Article 647, of the Revised Civil Statutes of Texas, 1925, when equal bids are submitted to the Board, in accordance with the provisions of the statute, by a Texas corporation and a foreign corporation, all other considerations being equal, it is the duty of the Board and its purchasing agent, under the statute, to give preference to the Texas corporation.

It is true in that case the question of constitutionality of the statute was not directly discussed, but it nevertheless was necessarily involved, and the opinion assumed the validity of the statute, and pointed out the reasons why such a preference was not obnoxious to the Federal Constitution and laws with respect to equal privileges of the citizens of the United States.

Freedom of contract is indeed one of the most valuable rights vouchsafed to the citizen by the various constitutions of the country. A law forbidding a citizen of Texas to engage in commerce with a citizen or corporation of another state would interfere with that liberty of contract vouchsafed by the Constitution. So, a law compelling a citizen to enter into contracts of purchases of commodities in interstate commerce rather than at home would likewise interfere with the favored privilege of freedom.

This protection of the right of freedom of contract is indeed a protection and not in anywise a coercion. It preserves the freedom -- the option -- to the citizen to buy and deal where he pleases. Surely, whatever a citizen of the State thus has, the State itself necessarily must reserve and does reserve to itself; that is, its freedom to purchase and deal when and where it pleases.

It is well settled by the decisions that when a government lays aside its sovereignty to the extent of exercising its proprietary rights with respect to property and the like, it binds itself substantially as the individual does by contract. This is the doctrine of many cases. See Hartman v. Greenbow, 102 U. S. 672, 22 Law Ed. 271;

Honorable A. J. Bailey - page 5

Poindexter v. Greenhow, 114 U. S. 270, 29 Law Ed. 185;
Keith v. Clark, 97 U. S. 454, 24 Law Ed. 1071; Murray v.
Charleston, 96 U. S. 432, 24 Law Ed. 760; Charles Scrib-
ners Sons v. Marrs, 114 Tex. 11, 262 S. W. 722; Conley
v. Daughters of the Republic, 106 Tex. 877, 156 S. W.
197. See, also, 25 Rul. Case Law, p. 302, Sec. 25.

So that, in the absence of a constitutional
inhibition, the State in its proprietary capacity to
contract with freedom occupies precisely the same posi-
tion as do her citizens to whom such freedom is vouch-
safed by the Constitution.

In Opinion No. O-1831, we advised the State
Highway Department that under Article 6674h, Vernon's
Annotated Civil Statutes, it had no authority to insert
in its contracts a clause providing for a 15 per cent
differential on the unit price bid in favor of domestic
cement over foreign cement, the statute calling for a
competitive bidding.

When the Legislature has thus prescribed the
policy of the State, it is binding on the agents, offi-
cers and instrumentalities of the State. So, of course,
where the policy has been to favor local labor, commodi-
ties or materials, that policy must be respected, and is
not violative of the usual constitutional provisions.

Our conclusion is in harmony with the authori-
ties. See:

Heim v. McCall, 239 U. S. 175, 60 L. Ed.
206;

Allen v. Labsap, (Mo.) 87 S. W. 926;

City and County of Denver v. Bossie (Colo.)
266 P. 214;

Ebbeson v. Board of Public Education,
(Del.) 156 A. 286;

State v. Senatobia Blank Book & Sta. Co.
(Miss.) 76 So. 258;

Lillard v. Melton, (S.C.) 87 S. E. 421.

Honorable A. J. Bailey - Page 6

Of course, it is not the policy or province of this Department to pass upon the wisdom or desirability of any law -- that being a matter entirely for the Legislature.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED APR 8, 1941

ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE